IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EVAN KIMOKEO LOWTHER, | CIVIL NO. 20-00343 JAO-KJM |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| v. | |
| SCOTT HARRINGTON, *et al.*, | |
| Defendants. | |

## ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is pro se Plaintiff Evan Kimokeo Lowther's ("Lowther")

second amended prisoner civil rights complaint ("SAC"), ECF No. 17, brought

pursuant to 42 U.S.C. § 1983. Lowther alleges that Defendants,[1] prison officials at

the Halawa Correctional Facility ("HCF") and the Waiawa Correctional Facility

("WCF"), violated his constitutional rights by "preventing [him] from getting a

minimally decent amount of sleep" and failing to provide an adequate law library

or trained legal assistance.[2] *Id.* at 5–9. For the following reasons, Lowther's

---

[1] Lowther names in their individual capacities Warden Scott O. Harrington ("Harrington") and Librarian Carolina Gunn ("Gunn"). ECF No. 17 at 1–2.

[2] Lowther served his sentence and is no longer incarcerated. *See* ECF No. 18 (letter from Lowther indicating that he would be "released and returning home" on

(continued . . .)

Eighth Amendment claim based on alleged sleep deprivation at the HCF may

procced, but his First Amendment claim regarding the adequacy of legal resources

at the HCF and the WCF is DISMISSED with prejudice pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b)(1).

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

---

(. . . continued)
January 30, 2021); *see also* Hawaii SAVIN, https://www.vinelink.com/classic/
#/home/site/50000 (follow "Find an Offender"; then search for "Evan Lowther")
(last visited Mar. 5, 2021).

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint; Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard.  *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[3]

Lowther filed his original Complaint on August 10, 2020, claiming that prison officials at the HCF violated his constitutional rights by housing him with "high security custody inmates," denying him eight hours of uninterrupted sleep each night, and providing an inadequate law library.  ECF No. 1 at 5–7.  On November 3, 2020, the Court dismissed the Complaint with leave granted to amend.  ECF No. 14.

Lowther filed his First Amended Complaint ("FAC") on December 7, 2020.  ECF No. 15.  In the FAC, Lowther alleged that prison officials at the HCF and the WCF violated his constitutional rights by "allowing [him] only 6 hours of sleep" and failing to provide an adequate law library or trained legal assistance.  *Id.* at 5–6, 8–9.  Lowther withdrew his claim regarding his housing classification.  *Id.* at 7.

On December 21, 2020, the Court dismissed the FAC with leave granted to amend.  ECF No. 16.  Regarding Lowther's Eighth Amendment claim based on the amount of sleep he received at the HCF, the Court concluded both that he did not allege a sufficiently serious deprivation and that he did not plausibly allege that a prison official had acted with deliberate indifference.  *Id.* at 5–10.  Regarding Lowther's First Amendment claim based on the adequacy of the law library and

---

[3] Lowther's factual allegations are accepted as true.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

4

the legal assistance he received, the Court concluded that Lowther neither

plausibly alleged how a library was deficient, nor had he shown that he had

suffered prejudice.  *Id.* at 10–14.

Lowther filed his SAC on January 25, 2021.  ECF No. 17.  Lowther alleges

in Count I that he was prevented "from getting a minimally decent amount of

sleep" during his incarceration at the HCF from January to October 2020.  ECF

No. 17 at 5–6.  Lowther claims that Defendant Harrington implemented a policy

requiring prison officials to conduct a "standing headcount" at 9:30 p.m., a

"walking headcount" at 10:00 p.m., and another standing headcount at 4:00 a.m.

*Id.*  The "walking headcount" involved prison officials "banging [on] doors" and

"shining [a] flashlight in inmates['] faces."  *Id.* at 5.  According to Lowther,

breakfast was not served until 5:30 a.m.  *Id.*

Lowther claims that he was not able to sleep at other times of the day

because of announcements over the public address system, noise or "other

disturbances" caused by inmates with mental health issues, and the possibility that

other inmates with "higher custody levels" might enter his cell.  *Id.* at 5–6.

Lowther claims that he experienced headaches, depression, weight loss, fatigue,

and diminished motor skills and dexterity because of the alleged "sleep

deprivation."  *Id.*

Lowther alleges in Count II that Defendant Gunn failed to provide an adequate law library or trained legal assistance at the HCF or WCF. *Id.* at 7–8. He claims that the library's "legal reference material[s]" were "around 10 years old." *Id.* at 7. He also claims that his federal habeas petition and Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 petition were dismissed because they included "outdated information." *Id.* at 8. He further claims that Defendant Gunn provided inadequate assistance by denying his grievances and requests for help.[4] *Id.* at 7–8.

Lowther seeks nominal, compensatory, and punitive damages totaling $20,000. *Id.* at 10.

## III.  DISCUSSION

### A.    Legal Framework for Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

---

[4]  Lowther also claims that Marina, a prison official at the WCF's law library, allowed "pro se inmate litigants" to use an "old glitchy typewriter" for only one hour per week.  ECF No. 17 at 8.  Lowther, however, does not name Marina as a Defendant.

act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted); *see Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).

## B.   Eighth Amendment Claim

Lowther alleges in Count I that Defendant Harrington violated the Eighth Amendment by enforcing a policy that prevented him "from getting a minimally decent amount of sleep."  ECF No. 17 at 5–6.

The Eighth Amendment prohibits "cruel and unusual" punishment for a person convicted of a crime.  U.S. Const. amend. VIII.  It imposes duties on prison officials to "provide humane conditions of confinement."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted); *see Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).  "'[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]'"  *Farmer*, 511 U.S. at 832–33 (some internal quotation marks and citations omitted); *see Foster*, 554 F.3d at 812.  Courts have also recognized sleep as a basic human need.  *See Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020); *see also Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." (citations omitted)); *Harper v.*

7

*Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs.").

A prison official violates the Eighth Amendment when two requirements are satisfied:  (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the official must have acted with "deliberate indifference" to inmate health or safety.  *Farmer*, 511 U.S. at 834 (citations omitted); *see Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

With regard to the first requirement, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Farmer*, 511 U.S. at 834 (citation omitted); *see Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).  This requirement is "contextual and responsive to contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.*; *see Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996).  Thus, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 9; *see*

*LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Quin'Ley v. Craig*, Civ. No. 16-00550 SOM/KSC, 2016 WL 7362808, at *6 (D. Haw. Dec. 19, 2016).

Conditions resulting in chronic, long-term sleep deprivation may support a claim under the Eighth Amendment.  *See, e.g.*, *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) ("[T]here is no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination." (internal quotation marks, brackets, and citation omitted)); *Garrett v. Thaler*, 560 F. App'x 375, 378–80 (5th Cir. 2014) (concluding that plaintiff plausibly alleged facts to satisfy Eighth Amendment's objective requirement where prison scheduled only four hours for sleep, and prisoners were awakened each hour for headcounts); *Matthews v. Holland*, No. 1:14-cv-01959-SKO (PC), 2017 WL 1093847, at *3 (E.D. Cal. Mar. 23, 2017) ("Plaintiff's allegations that . . . checks were conducted and resulted in loud beeps in 5, 10, 15, and 20 minute intervals, 24 hours a day, every day [for more than a year], which resulted in his inability to sleep is sufficiently extreme to meet the objective element of a conditions of confinement claim." (citation omitted)); *Miesegaes v. Dep't of State Hosps. – Atascadero*, No. CV 18-08498-CJC (RAO), 2020 WL 5415389, at *8 (C.D. Cal. June 15, 2020) ("[E]xtreme conditions such as constant bright lighting or long-term excess noise constitute Eighth Amendment violations." (citation omitted)).

Here, Lowther claims that Harrington implemented a policy requiring prison officials to conduct a "standing headcount" at 9:30 p.m., a "walking headcount" at 10:00 p.m., and another standing headcount at 4:00 a.m.  ECF No. 17 at 5–6.  During the "walking headcount," prison officials allegedly "bang[ed] [on] doors" and "shin[ed] [a] flashlight in inmates['] faces."  *Id.* at 6.  As a result, Lowther could not fall asleep until "after 10:00 pm."  *Id.*  Based on these allegations, Lowther received at most six hours of uninterrupted sleep each night, during the ten months he was incarcerated at the HCF.

According to Lowther, the 4:00 a.m. "standing headcount" "seem[ed] to serve no purpose other than preventing inmates from getting a minimally decent amount of sleep."  *Id.* at 5.  Lowther claims that breakfast was not served until 5:30 a.m.  *Id.*  Lowther also claims that it was "very difficult if not impossible" to sleep at other times during the day because of regular announcements over the public address system, noise and "other disturbances" created by inmates with mental health issues, and the danger that inmates with "higher custody levels" might enter his cell.  *Id.* at 5–6.  Based on these allegations, Lowther has plausibly alleged a sufficiently serious deprivation.

Regarding the second requirement, "deliberate indifference" requires more than negligence but does not require purpose or knowledge.  *See Farmer*, 511 U.S. at 836.  "[A] prison official cannot be found liable under the Eighth Amendment

10

for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Lowther alleges that he submitted an "inter unit request" directly to Harrington requesting that the 4:00 a.m. headcount be moved to 5:30 a.m.—that is, just before breakfast.  ECF No. 1 at 6.  According to Lowther, Harrington never responded.  *Id.*  Lowther further alleges that he submitted multiple grievances complaining that the 4:00 a.m. headcount "was harming inmates." *Id.*  According to Lowther, despite his pleas, Harrington "refused to change [the] policy." *Id.* Thus, Lowther has plausibly alleged that Harrington was deliberately indifferent to the claimed sleep deprivation.  Lowther's Eighth Amendment claim may therefore proceed.  In reaching this conclusion, the Court determines only that Lowther has alleged a plausible claim of an Eighth Amendment violation.  The Court does not intimate that Lowther has established a claim on which relief should be granted.

**C.    First Amendment Claim**

Lowther alleges in Count II that Defendant Gunn violated the First Amendment by maintaining an inadequate law library and providing inadequate assistance.  ECF No. 17 at 7–8.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities . . . as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citations omitted).  "'[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"  *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).

As the Supreme Court has explained, however, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks and citation omitted); *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999) ("The scope of the right of access to the courts is quite limited[.]"); *Phillips*, 588 F.3d at 656 ("Our precedents confirm the limited nature of the right recognized in *Bounds*.").  Because there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis*, 518 U.S. at 351.  Instead, "meaningful access to the courts is the touchstone, and the inmate therefore must

12

go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal quotation marks and citation omitted).

The prisoner must therefore allege actual injury. *See Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) ("Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." (citation omitted)). A prisoner may do this in various ways, such as by showing: "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Lewis*, 518 U.S. at 351. Or the prisoner may show "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* States are not required to enable prisoners to discover grievances or to litigate effectively once in court. *See id.* at 354.

Lowther claims that the law library's "legal reference material[s]" were outdated because they were "around 10 years old." ECF No. 17 at 7. A prison is not required, however, "to provide its inmates with a library that results *in the best possible access to the courts.*" *Phillips*, 588 F.3d at 656 (internal quotation marks and citation omitted). "Instead, what [is] required [is] that the resources meet

minimum constitutional standards sufficient to provide meaningful, though perhaps not 'ideal,' access to the courts." *Id.* (citation omitted).

Moreover, Lowther has not plausibly alleged that he suffered any actual injury because of the law library's alleged deficiencies and the assistance he received from Gunn. Lowther claims that the law library's deficiencies and Gunn's assistance hindered his efforts to pursue a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court, and a petition for post-conviction relief pursuant to HRPP 40 in state court. ECF No. 17 at 7.

Regarding his habeas petition, Lowther filed both an original and amended petition while he was incarcerated. *See Lowther v. Hyun*, Civil No. 20-00401 JAO-RT, 2020 WL 6298065, at *1 (D. Haw. Oct. 27, 2020). This shows that Lowther was able to pursue his claims. *See Phillips*, 588 F.3d at 657 ("[T]he right vindicated by *Bounds* is a right of 'meaningful access to the courts.'" (citation omitted)). The Court ultimately dismissed the petition because, among other things, Lowther failed to exhaust his administrative remedies and filed the petition nearly eighteen years after the one-year statute of limitations had run. *See Lowther*, 2020 WL 6298065, at *2–5. Lowther fails to say how any alleged deficiency in the law library between February and October 2020 led to this outcome. Indeed, updated "legal reference material[s]" would not have cured the flaws in Lowther's habeas petition. Similarly, Lowther has not shown that Gunn's

assistance between February and October 2020 led to the dismissal of his petition. Nor could he, given that the petition was filed nearly eighteen years after it was due.

Regarding his HRPP 40 petition, Lowther fails to say when he filed this document, where he did so, and the basis for the petition.  Although Lowther claims that his HRPP 40 petition was dismissed because it included "outdated information," ECF No. 17 at 7, he cites no record of the dismissal and the Court has found none.  *See* Fed. R. Evid. 201(b); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating courts "'may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue'" (citation omitted)); *see also* https://www.courts.state.hi.us/legal_references/records/jims_system_availability (choose "Click Here to Enter eCourt* Kokua," then choose "Accept," then choose "Case Search," then search for "Case ID 1PC001001877") (last visited Mar. 5, 2021).  Moreover, Lowther does not identify what "outdated information" he included in his HRPP 40 petition, nor has he shown how updated reference materials or different assistance would have led to a different outcome.

Because Lowther fails to allege that any actual injury resulted from the allegedly inadequate law library and Gunn's assistance, his claim in Count II against Gunn is DISMISSED with prejudice.

## IV.  **CONCLUSION**

(1) Lowther states a claim under the Eighth Amendment against Defendant Harrington and the Second Amended Complaint shall be served on Harrington as directed below, who is required to file a response after service is effected. 42 U.S.C. § 1997e(g)(2).

(2) Lowther fails to state a plausible claim under the First Amendment against Defendant Gunn, and it is DISMISSED.  Because Lowther has had three opportunities to state a colorable claim for relief and was unable to do so, this dismissal is with prejudice.

## V.  **SERVICE ORDER**

IT IS HEREBY ORDERED:

(1) The Clerk's Office is directed to send Lowther two (2) copies of the endorsed Second Amended Complaint, two (2) summonses, two (2) USM-285 forms, two (2) Notice of Lawsuit and Request for Waiver of Service for Summons forms (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and an instruction sheet.  The Clerk's Office shall also send a copy of this Order to the United States Marshal.

(2) Lowther shall complete the forms as directed, provide an address and any other pertinent information required for service, and submit all of the documents to the United States Marshal in Honolulu, Hawai'i.

(3) Upon receipt of these documents from Lowther, the United States Marshal shall mail to Defendant Harrington a copy of the Second Amended Complaint; a completed Notice of Lawsuit and Request for Waiver of Service form (AO 398); and two (2) completed Waiver of Service of Summons forms (AO 399), as directed by Lowther without payment of costs.  *See* Fed. R. Civ. P. 4(c)(3).

(4) The United States Marshal shall retain the summons and a copy of the Second Amended Complaint.  The United States Marshal shall file a returned Waiver of Service of Summons form as well as any Waiver of Service of Summons form that is returned as undeliverable, as soon as it is received.

(5) If Harrington does not return a Waiver of Service of Summons form within sixty days from the date that such forms are mailed, the United States Marshal shall:

(a) Personally serve Harrington pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

(b) Within ten days after personal service is effected, file the return of service for Harrington, along with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service on Harrington.  These costs shall be enumerated on the USM-285 form and shall include the costs incurred by the United States Marshal's office in photocopying additional copies of the summons and the

Second Amended Complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served Defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(c) Lowther is cautioned that should he fail to comply with this Order and his non-compliance prevents timely and proper service on Harrington as set forth in Fed. R. Civ. P. 4(m), this action is subject to dismissal for failure to serve.  If Lowther wishes to effectuate service without the assistance of the United States Marshal, he may do so pursuant to Fed. R. Civ. P. 4.

(d) After the Second Amended Complaint is served, Lowther must serve a copy of all further documents submitted to the court on Harrington or his counsel.  The United States Marshal is not responsible for serving these documents on Lowther's behalf.  Lowther shall include, with any original paper filed with the Clerk's Office, a certificate stating the date that an exact copy of the document was mailed to Harrington or his counsel.  Any paper received by a Judge that has not been filed with the Clerk's Office or that does not include a certificate of service will be disregarded.

//

//

//

//

//

(e) Lowther is notified that until service of the Second Amended Complaint has been effected, he should not file motions or other documents with the court.  Lowther is further notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules of Practice for the United States District Court for the District of Hawaii.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 5, 2021.



Jill A. Otake
United States District Judge

*Lowther v. Harrington, et al.*, Civil No. 20-00343 JAO-KJM; ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE